Good morning, Your Honor, and may it please the Court, Martine Ciccone for Appellant Clarence Brown. This Section 1983 case is brought by a plaintiff subject to an involuntary order of civil commitment pursuant to Texas's Sexually Violent Predator Act. Appellant Mr. Brown alleges that the defendants violated his due process rights by subjecting him to punitive conditions of confinement and retaliated against him for exercising his First Amendment right to complain about those conditions. I'd like to start with the retaliation claim and then move on to the two separate due process claims, one of which concerns the 55 days that Mr. Brown was confined in the Cold Springs Jail and the other of which concerns his confinement at the facilities the defendants used to house persons committed under the SVPA at the time relevant to the complaint. So are you alleging a due process constitutional challenge to the confinement system because it uses these facilities? Is that part of the challenge or is it just to his specific commitment at this facility for 55 days? Your Honor, there's two separate due process challenges. One of them is specific to the time that Mr. Brown spent at the Cold Springs Jail. The other challenge is to his confinement at the facilities in El Paso and Fort Worth that were then used to house sexually violent predators under Texas's commitment scheme. Again, I'd like to start with the retaliation claim, but if you'd prefer I start with due process, we can go that route. You can start wherever you'd like. So with respect to the retaliation claim, this is the second argument in our brief, but I'd like to start there because I think it's the most straightforward insofar as it involves direct evidence of retaliation on the part of the defendants, specifically Defendant Basham, who was then the facility administrator at the Fort Worth Transitional Center where Mr. Brown was briefly held, and then also Defendant Taylor, who was at the time the executive director of the Office of Violent Sex Offender Management. Under this Court's precedence, a claim for retaliation requires a plaintiff to plead four elements. First, the exercise of a specific constitutional right, the defendant's intent to retaliate against the plaintiff for exercising that right, a retaliatory adverse act, and causation. Can you give us the specific allegations regarding Basham's personal involvement in the alleged retaliatory arrest in confinement and also Taylor's? Yes, Your Honor. With respect to Basham, Mr. Brown alleges in his complaint, and this is at ROA 494, complaint paragraphs 29 through 30, that immediately after he made reference to filing a lawsuit against Avalon Correction Services, Mr. Basham made the decision to terminate him from the Fort Worth facility. He further alleges, and this is at ROA 495, complaint 33, that immediately before he was taken to jail, Basham came to his room and told him that he would not tolerate Mr. Brown causing problems in Fort Worth, as he had in El Paso, that he had heard from officials in El Paso that Mr. Brown would be a problem, and that he would not tolerate Mr. Brown contacting Avalon's home offices. All right. Now, on that basis, was he arrested? Your Honor, to be clear, this is not a claim for retaliatory arrest. This is a claim that involves… May I ask you a question? Is this at the time he was arrested on that basis? Your Honor, Mr.… What was he arrested for and put in jail? He was arrested for violating the conditions of his civil commitment. And what was that? The condition was that he was required to sign a form allowing him to be at the facility and also that he refused to follow a direct order from staff. That's the basis of your First Amendment claim as well? Your Honor… That he was not given an explanation or was punished or retaliated against for requesting an explanation? Your Honor, it is a fair exercise of constitutional—of your First Amendment constitutional right to question an order that you sign a form… May I ask you that? Is that the basis of what you're arguing? Is that the basis of your First Amendment claim? It is, right? No, Your Honor. What is the basis of your First Amendment claim? That Mr. Brown filed grievances while he was in El Paso and also later while he was in the Cold Springs Jail and that it was because of those grievances that he was required to remain in the Cold Springs Jail rather than returning to the secure facilities that he was generally held. We can disregard, as far as any substantive claim that you are making, the retaliation for failing to sign the document that he refused to sign until it was explained to him? Or am I missing something? Your Honor, the State essentially alleges that what Mr. Brown's complaint says is that he was retaliated against because he failed to sign the rules. That's not correct. That's not what the complaint alleges. What the complaint alleges was that he was retaliated against because he exercised his First Amendment right to file grievances. The complaint is replete with those allegations. Can you clear it up for me? Okay. Can you clear up this? If it's not allegedly retaliatory arrest that Basham and Taylor are their personal involvement, what is it? It's retaliation—sorry. Mr. Brown was arrested, and that arrest was supported by probable cause, and for that reason, a retaliatory arrest claim under this Court's precedent is not permissible. However, what Mr. Basham did when he rejected Mr. Brown from the facility was a retaliatory adverse act on its own because it came with it the possibility that Mr. Brown would be prosecuted for a third-degree felony for failing to reside in a residential facility under contract with the office. So it's rejection from the facility, not being arrested and sent to the jail? Your Honor, to be clear, it's rejection from the facility, which resulted in his confinement in Cold Springs Jail, but it was not immediate. If I can just clear up a little bit of the narrative here. Mr. Brown was arrested in early March. At that time, he was sent to the Tarrant County Jail. He posted bail in September, on September 13th. At that point, he was released from any confinement pending charges. He was no longer a pretrial detainee as far as the Texas criminal justice system was concerned. However, because of the defendant's retaliatory motives, he was required to remain in jail. He was kept in the Cold Springs unit of the Tarrant County Jail rather than being allowed to return to the Fort Worth Transitional Facility. That was because of Mr. Basham's retaliatory decision to terminate him from that facility and not allow him to return, and Ms. Taylor's decision to require him to remain in jail. At paragraph 52 of the complaint, Mr. Brown alleges that he was told by Ms. Taylor's subordinate, you will remain in jail until you learn to quit filing grievances and lawsuits. That is a clear statement of retaliatory intent on the part of the defendants, the retaliatory adverse act being that he was required to remain in the Tarrant County Jail. I would add that that statement was made after Mr. Brown was acquitted. He was under no pending charges, and he was not confined in the Cold Springs Jail under any order by any court considering criminal charges. That is the basis of the retaliation claim. Texas's argument that his claim is only that he was retaliated against because he refused to sign a rule is simply irreconcilable with the allegations of the complaint. As we describe on pages 5 through 10 of our reply brief, the complaint is replete with allegations that he was retaliated against because he complained about the conditions of his confinement, because he filed grievances, because he pursued legal action, because he contacted the Avalon Home Office in Oklahoma, and I would add also that in the exhibits to the complaint, and you can find these at All right, now, if that's true, was there any kind of administrative process that was set up for him to appeal any grievance that he had? I mean, if he thought these retaliations resulted from the grievances that he had filed, was there any way for him to appeal that decision administratively? Your Honor, again, he filed this complaint in October 2012 at the time he was still in the jail, so his remedy at that point was to file a claim against the defendants for retaliating against him, and I don't understand this Court's precedence to excuse a retaliatory decision to put someone in jail or to terminate them from a facility because there is an allowable administrative procedure. There were procedures in place for him to complain about the conditions of his confinement. He followed those procedures. He found them ineffective. He also tried other avenues. You're talking faster than I can hear. Now, did he file? You are saying that he did file appeals from the retaliation that he alleged that he suffered. Is that what you're saying? Your Honor, he filed grievances concerning his conditions of confinement. All right, so what happened to those grievances? They were not addressed. Okay, they just languished. As he describes, and you can find this in letters that he sent to Avalon, I believe it's at ROA 533 to 536, he describes filing grievances, having them languish. He describes the grievance process being inadequate. For that reason, he sent letters to the president of Avalon, and he alleges that it was those grievances and letters that were the reason that he was rejected from the Fort Worth facility. In fact, that's what he was told by Defendant Basham. I will not tolerate you contacting the Avalon Home Office under any circumstances. Again, that's at paragraph 33 of the complaint. So the state's argument that he has not alleged a claim for retaliation for a protected First Amendment right cannot be reconciled with what's in the complaint. The district court's decision on that basis is similarly inadequate. Now, what was his complaint to the management at Avalon? Concerning his conditions of confinement. Like what was that? He thought that the living conditions were inadequate, that he wasn't getting adequate treatment. Did he allege specific violations? He made specific allegations that the food was inadequate, the restrictions were excessive, just a variety of complaints. I mean, that sounds general, but, I mean, like did he say they're serving watered-down cornbread or something like that? He did, Your Honor. I don't have it directly in my head exactly what he alleged. I believe he made a comment about not having adequate nutrition, there not being a supply of fruits and vegetables, things that you would expect, but they are specific, yes. He made those complaints locally? He made them, and again, you can see this in ROA 533 to 536. He describes having made them, through the grievance procedure, available to him, but then finding them unaddressed, then reaching out to the Avalon home office in Oklahoma City and addressing them there. Yes, I think that's a fair way of describing it, yes. He felt that because his grievances weren't being addressed, he even says at one point in one of those letters, this is my only avenue. His other complaint about the grievance procedure was that it applied to prisoners and parolees because this was a multi-use facility in El Paso, and as a civilly committed person, the grievance procedure didn't necessarily apply to him. So there wasn't a separate grievance procedure for people in this unique program? That was his claim, yes. That was one of his concerns. Was it true or not? Your Honor, the record indicates. The record doesn't say. Everything in the record suggests that that is correct, but I don't know. So on this inappropriate continued confinement at the Cold Springs Jail because of the grievances, this allegation of this, that implicates Basham, Taylor, and Anderson? I'm trying to figure out who are the people that would stay if you're correct. With respect to retaliation, it implicates Mr. Basham, but not with respect to the separate due process claim because Mr. Basham was not responsible for his confinement there. The individual defendants that are responsible for his confinement in Cold Springs are Ms. Taylor, who made the deliberate decision to house him there if what Mr. Brown was told in his complaint is to be believed. They went to his committing judge in Montgomery County and got an order requiring him to be in Cold Springs. That was a deliberate choice on the part of the office. He was in constant contact with the office during his time there. They were aware that he was there, and they were aware that he was there for 35 days following his acquittal. Does getting an order, though, somehow immunize them for being—because then it's pursuant to the order of the judge rather than their actions? No, Your Honor. Barring the most exceptional circumstances, all confined prisoners are confined pursuant to a court order, but the conditions of their confinement must comport with due process standards, and their custodians are responsible for housing them in conditions that are consistent with due process standards. Because Mr. Brown was a civilly committed person and not someone who was serving a criminal sentence, he was required to be held under conditions that were, as the Supreme Court said, more considerate than his criminal counterparts, and they had to be very reasonable in relation to the purposes of his commitment, which were supervision and treatment. His conditions in Cold Springs did not meet that constitutional standard, and for that reason, again, Defendant Taylor, the executive director of the Office of Violent Sex Offender Management, is responsible. Sheriff Anderson, who was his custodian at the time, is responsible, and by inference from Sheriff Anderson, Tarrant County is responsible because Sheriff Anderson is a policymaker under Texas law, as this Court has recognized in several of its precedents, in the area of law enforcement, making the county liable. Okay, does this suit right now, and I know I've already asked you something similar, does it challenge the amended Sexually Violent Predator Act on its face as being unconstitutional? It does not. Several responses, Your Honor. First of all, the statute has changed, so the current iteration of the statute is not at issue at all, and with respect to the statute as it then existed, Mr. Brown's complaint is as applied. The statute changed in a way that opened the door to the possibility that it would be administered in a way that was punitive. In other words, the legislature changed the statute from that which it was when the Texas Supreme Court upheld it. That opened the door to the possibility that it would be administered in a punitive way, but it did not necessarily guarantee that. So our challenge does not suggest that the statute on its face is unconstitutional. I'm not trying to get it to say, well, in re commitment of Fisher said that the old statute was okay, but this new one is not. That's not an argument here. You're only talking about the specific treatment at these two facilities. That's correct, Your Honor. It may apply more broadly than Mr. Brown himself, but it is the administration of the statute by the defendants, their execution of it in their discretion that created the punitive nature of the statute. It is not the statute itself. Are you asking only for monetary damages? Are you asking for injunctive relief? What do you want us to do? What would you have us do? At this stage, Your Honor, all that's necessary is to reverse the decision dismissing the complaint. The relief sought is monetary damages because of the change in the legislative scheme. There was a change in the legislative scheme in 2015. Mr. Brown was recommitted under a new commitment order. So there is no further request for injunctive relief because that request is mooted by the legislative change. The only relief sought is damages. And you're not asking us to award money damages. No, no. You're just wanting the complaint to have a chance to go through a normal course. Absolutely, Your Honor. This complaint was dismissed sua sponte, and it was dismissed for failure to state a claim. For the reasons we explained, that was incorrect. Thank you. Thank you. Ms. Green. May it please the Court, Stephanie Green representing Texas Attorney General as amicus. I'd like to follow up. Why are you amicus? Well, because the – Because it sounds like you're really the party. Sure, Your Honor. So aren't you making an appearance here today because you're making all the arguments that Texas would make? Yes, Your Honor. It's because of the peculiar posture of the case. It arises under a dismissal that occurred pursuant to the Section 1915 screening provisions where a district court is required to dismiss a complaint that is frivolous, that fails to state a claim, or that seeks monetary relief against immune defendants. Right. But I'm just not sure it's appropriate for you to be considered amicus because you have a stake in the case. And so to me it seems that you were actually appearing for Texas today. I'm not trying to trick you, but this is very troubling to me. Do you understand that? So are you appearing for Texas here today? I'm representing – You're representing Texas Attorney General. Yes, Your Honor. And the claims are against Texas officials. That's right. So – So we are representing the state of Texas, and our interest is that otherwise the putative defendants would not be represented. Also, we have an interest in presenting to this court that the claims be – or this court's inquiry be limited to the claims that were properly presented. Specifically, there's no constitutional claim. But you're not a friend of the court in that you have a – I mean, you're not an enemy. You understand what I'm saying. I do. But you don't have – you have a stake. Your client has a stake in this case. Your Honor, it's my understanding that these appearances are common, especially with the posture of a Section 1915 dismissal. But common doesn't make it correct. Your Honor, I'm not prepared to – Well, I would like for each of you to submit a 28J. I'm not forcing you to continue your argument, but if you win to continue, then I need a 28J from both sides as to whether Texas has appeared in this matter. That's right. Because I don't see how you can make arguments on behalf of a client and be called to be a friend of the court in the context. But you're welcome to make arguments if you choose. Okay. Well, I'll continue on with respect to the propriety of the dismissal of the 1915 complaint. Brown made a Section 1983 civil complaint for damages against individual defendants, and I'm happy to submit a 28J letter in response to this court's inquiry. Thank you. And the other side can do so as well, and you all can do so by Monday. Thank you. So with respect to the claims properly before this court, the dismissal was proper because Brown did not state viable claims under Section 1983 against individual defendants for monetary relief. The retaliation claim, I understand, is two claims, the first against Basham and Taylor. But specifically, I want to clarify the facts in this case. Brown's contention is that Taylor initiated the arrest of Brown as the alleged adverse act. But it's clear if you take his allegations as true, there's no act or participation by Taylor with respect to the documents that Brown has attached to his own First Amendment complaint. He specifically noted that Washington contacted DPS. DPS found that there was probable cause for his arrest on the basis that he violated a commitment, a civil commitment condition, and that was that he failed to sign the intake package, you know, for his stay at the facility. And secondly, that a grand jury indicted Mr. Brown, and it seems conceded on appeal that the arrest is not the alleged adverse act. It seems to be the second claim that Washington made a statement that Brown would remain at Cold Springs facility until he learned to stop filing grievances. However, that allegation is not even made about a defendant in this case. And so there's still no allegation that Director Taylor had any awareness or involvement in Brown's stay at Cold Springs, which also was not improper under the statute. Brown's allegations are that he was there under an order from his committing court, and the statute itself identifies that an SVP can remain at a facility that is under contract with the agency. And so his order of commitment at the record on Appeal 521 identified that he is required to be in supervised housing, and he could not be transferred from that facility without authorization from his commitment court. So there was no action that he was confined there on the basis of anyone's retaliatory motive or intent. He was there after he posted bond and after he was acquitted, though. Yes, Your Honor. So you're saying he can be just kept there forever at the Cold Springs jail? So he was at the Cold Springs facility while he was awaiting transfer, but when he posted bond in September, he was not entitled to release to be free. He was under an order of commitment. Right, but can he be kept in the Cold Springs jail indefinitely without any violation of his rights? So, Your Honor, he may not be kept indefinitely. However, the conditions of his confinement have to be related to the purposes for which he was committed, and he was confined following the posting of bail until his criminal trial. By the time he was acquitted October 3rd, by October 11th, the logs he supplied at ROA 101 through 107 show he was receiving sex offender treatment and counseling. He was permitted to leave the facility to receive medical treatment. All of the conditions were consistent with the level of supervision he identifies that he was on at the time. So you're saying he could be kept at the Cold Springs jail as long as he's having those treatment conditions? Yes, Your Honor, so long as the facility was, you know, within the statute's implementation and was not a violation of due process, if proximity to a prison setting or a jail setting or proximity to other prisoners or proleagues stated a constitutional violation, then Kansas v. Hendricks would have come out the other way. But isn't he supposed to be in a residential treatment facility if he can be unless he's… And it's clear that his transfer was being arranged. He identified at ROA 80 that the issue was availability of housing, plus his treatment had to be coordinated. So he was there following his—by October 3rd, he was acquitted, and by November 7th, he was transferred to the South Texas Transitional Center. The administrative delay cases that are cited in Brown's brief were all related to individuals who were entitled to release from a facility, but he was required by his order of commitment to be in supervised housing. So he was retained at the Cold Springs facility until he was transferred to the South Texas Transitional Center. How do you explain that period of time in the jail other than the fact that he was receiving treatment at that time? Why couldn't he have been at a halfway house somewhere else receiving that treatment? In other words, there's a punitive aspect that is jail confinement. I mean, he certainly wasn't free to leave the jail except for the purposes of—was he free to leave the jail at all? He was permitted to leave for the instances that were permitted at his level of supervision. The document he identifies that showed the levels of supervision is at ROA 332, and those who are at higher levels who have obtained treatment in progress in the program are allowed to leave their facility of residence for other things, including seeking employment, including potentially treatment from a private facility. So you're telling me that his jail time was a facility of residence? The Cold Springs facility, yes, he alleges, and we don't object to the characterization, that OVSOM had a contract to sometimes place residents that were adjudicated sexually violent predators at the facility while they transferred them to available. The facility being a jail that houses criminals is also acceptable for— is legally acceptable for a person under the confined restrictions that he was. Yes, Your Honor. Under Kansas v. Hendricks, the record there showed that sexually violent predators were housed in the psychiatric wing of a prison hospital. The record there also showed that prisoners and civil committees were treated the same under the statute. The standard to be— And we've approved that. Yes, that's under Kansas v. Hendricks. And then in Selling v. Washington, the Washington statute that was at issue was a situation where the sexually violent predator facility was located within the Department of Corrections and relied on the Department of Corrections for essential services. And so saying a place is secure, saying a place has, you know, elements of a prison-like setting, it does not state a constitutional violation. The district court was right to identify that those claims that a statute can be identified as punitive and not civil have been repeatedly rejected. So what is the test that we apply to the legality or non-legality of the 55 days? The conditions of confinement? In other words, yes. So due process requires only that the conditions of confinement and the duration of confinement bear some reasonable relation to the purpose for which persons are committed. In this case, the Texas Supreme Court has identified that the act's purpose is towards long-term treatment and supervision of a legislatively identified group of extremely dangerous individuals who have been civilly committed because of a behavioral abnormality that makes them predisposed to commit future predatory acts of sexual violence. I mean, that was the basis that you retained him in jail is to allow him to go through the treatment facilities. And you're saying that it would have made no difference constitutionally one way or the other if he had been transferred from the jail to a halfway house. I'm stating that Mr. Brown's complaint identifies no condition that is without purpose, that is arbitrary or does not connect to the purposes of the statute. And so to the extent that there was a preferable facility, that doesn't make an as-applied implementation-based challenge to the statute and the nature of the statute proper. Selling the young also squarely addresses that issue as an unworkable proposition. Justice Scalia's concurrence noted that just as more compassionate implementation can't make a punitive statute civil, a more harsh implementation cannot make a civil statute punitive. And to the extent the Texas courts have rejected these claims as to the nature of the confinement conditions being punitive, an as-applied implementation-based challenge should not be the basis for upending the legislative scheme that's been put in place that is oriented towards the legitimate non-punitive goals of long-term supervision and treatment. Was there any distinction between terms of his confinement based on the criminal charges of which he was later acquitted and the confinement that was imposed upon him after his acquittal but awaiting his treatment? That's not clear from his allegations, Your Honor. There is a lack of specificity as to who is alleged to have done what. Would that make any difference to your argument at all or to your position if there was absolutely no perceptible basis to say that his conditions had changed from the time that he was acquitted until the time that he was released to go back to the halfway house? I'm not sure that it would, but in this case, he was receiving the treatment that was required. He was permitted to leave for the reasons that were consistent with his particular order of commitment. And so the fact that— That was not available to him for the time that he was serving before he was acquitted. That was not available while he was a pretrial detainee, while he was awaiting his criminal trial. And, you know, that's— Those became available to him after he was acquitted, you're saying. That's correct. And he was, in fact, released to go to these treatment— That's correct. His own—the logs that he supplies as documentary support for his first amended complaint at 101 through 107 shows that he was leaving the facility on Tuesdays and Thursdays to attend sex offender treatment and counseling. And I believe there are visits to the VA. And one that I can only presume is to meet with his registration requirements. Now, it's my understanding the state has taken a position on the amendment of his complaint. So it was our reading of the appellant's brief that they were putting at issue the 2015 version of the statute. There are several points at which they say today the act as applied is punitive, and now in its current iteration it is punitive. And so we, you know, we don't think that's properly before the court, nor is the constitutional challenge, because Brown's claim is for monetary relief. But what about the issue about whether or not the district court erred in not letting him amend his complaint? Are you taking a position on that? So the district court's dismissal was proper under the screening provisions of Section 1915. Brown received substantial guidance and support from the district court. So you are taking a position that you— That the dismissal was proper? That not allowing him to amend was appropriate. Oh. That's what I'm talking about, amending, not whether or not on the existing claims. We've talked about dismissal on the existing claims. I'm talking about the failure to allow him to amend at a time where no one could be prejudiced because no defendant had been served and no defendant had appeared, and he's trying desperately to say he's bringing official capacity and trying to get what the Tarrant County entity is supposed to be called correct. Why would a denial of a motion to—are you taking a position on that? Your Honor, it wasn't an abuse of discretion for— So you are taking a position. Yes, ma'am. So the district court didn't abuse its discretion in denying leave to make futile amendments to— Why is it futile? Because all of Brown's claims are retrospective and they seek money—they seek relief in the form of money damages. He is not making a request for prospective injunctive relief. There's no request for a declaration. There's no allegation of ongoing unconstitutional conduct by any individual acting under State law. All of that relief that is retrospective would be barred by the Eleventh Amendment against the defendants in their official capacities, and that is a point that the district court made in advising Brown with bringing his amended complaint. He identified that your claims for money, a monetary relief, are going to be barred unless— and then the district court explained the exceptions stated in Ex Parte Young, and Brown was only asked to bring specific claims against specific defendants, identify the capacities in which he would sue them, and then provide the factual underpinnings for his allegations. So it was then on Brown to raise those claims, and it's not an abuse of discretion. You're supposed to freely amend. Yes, even under the FOMEN standard, a denial of leave to amend to make a futile amendment is not an abuse of discretion, nor was this a case where the district court dismissed without reason or explanation. His order identified—the district court's order identified that the claims were not going to be able to go forward and that that was the basis of not allowing— And the footnote. Yes, there was a footnote as well as—yes, Your Honor. Anything else? So I think the—to the extent that Brown never alleged particular defendants causing the alleged adverse act with respect to his retaliation claim and, moreover, he doesn't identify specific defendants causing him an unconstitutional deprivation, the district court properly dismissed his complaint. Let me ask you further, if we remanded for further consideration, what would be the trial issues here that would sustain his claim that are in dispute now? I mean, what would a trial result in? So it's unclear that he has brought a viable claim or raised a claim beyond the speculative level that should be remanded for further consideration. Brown's allegations, if taken as true, and the documentary support to his first amended complaint, do not create viable Section 1983 claims against individual defendants for monetary relief. Assuming that he could show everything that he's alleged in his complaint, there would be no relief available for him. I guess that's what's natural in your position. That's right, Your Honor. We respectfully request this Court affirm the dismissal of Brown's first amended complaint. Thank you. Your Honor, I'd like to address the Cold Springs issue because I think there's a significant amount of confusion with respect to exactly how Mr. Brown was held and under what capacity. To be clear, at no time during his confinement at Cold Springs was Mr. Brown held pending trial on his criminal charges. He was released on bond. As far as the Texas criminal justice system was concerned, he could have been released. I'm not suggesting that he should have been released. But at that point, the only standard relevant to his conditions of confinement were the standards applicable to a civilly committed person. The state admits that through the majority of the time that he was at Cold Springs, he was not given sex offender treatment. And, again, that's at ROA 100 through 107, showing that he was not given counseling until October 16th. Okay. He committed the crime of third degree felony. That's right. On what date? He was arrested on March, I believe it was March 12th or March 9th. How long did he stay in jail as a result of that? He was in jail until he posted bond on September 13th. How long was that? About seven months. On September 13th, he was transferred to the Cold Springs jail. Yes, his criminal trial had not yet occurred, but he was not detained pending trial. He was released pending trial. He was only detained because he was in- When was he released? When did he make bail and was released from the criminal trial, criminal charges? On September 13th. Okay. He made bail. And then, so from that point forward, although he made bail, he continued to occupy the jail? That's correct. He was actually transferred to another jail unit, and the state's position is we didn't have to give him any treatment. We didn't have to treat him within the constitutional standards applicable to a civilly committed person because his criminal charges had not yet been adjudicated. But they say that once the criminal, once he was released after finding him not guilty on his criminal charges, that he stayed in the facility, but at that time, he was still undergoing treatment. Are you contesting that as a statement of fact? No, Your Honor. I agree with that. And I would say even if that were true and even if that were enough, which it's not, and I'll explain why, even if that were enough, that does not excuse the fact that for the majority of the time that he was in Gold Springs, he was not getting treatment, and the state conceded that. So what should have happened to him? That's correct. He should have been treated as he would have been in the El Paso or Fort Worth facilities, assuming those were constitutional, which we do not concede. He should have been sent to a halfway house? Yes, Your Honor. Yes, Your Honor. And he should have been permitted to return to his halfway house. He was not because of the retaliation. And I would just add that the state's position is essentially we can keep someone in Gold Springs indefinitely as long as we're providing treatment, and there's no difference. And I would just like to point out what Mr. Brown alleges in his complaint about his treatment at Gold Springs. He says he was classified as an inmate. He was made to wear a jail uniform. He was subject to jail rules and jail disciplinary procedures. He was, in fact, found in violation of jail rules just because he put a blanket over his face because he was cold. His mail and phone calls were censored, and he was living amongst people who were charged with and convicted of crimes. The state argues not only is that constitutional, but those allegations do not even stately claim for due process violations. And I would just like to briefly address the state's arguments with respect to sealing because I think that case is actually very clear as to why this is the appropriate remedy. Sealing concerned an ex post facto and double jeopardy challenge in habeas. What the court said in that case was, no, it's not appropriate when the state supreme court has deemed a civil commitment scheme civil for folks to then go in habeas and say the conditions under which I'm actually being held are punitive and to seek relief, to seek release from their civil commitment on the basis of punitive conditions. But the court explicitly said that it was not considering how as applied conditions would affect a due process challenge and also noted that the conditions that that petitioner was living under were the subject of a section 1983 claim and that center was in fact operating under an injunction. That's at page 265-266 of sealing. In no way does sealing suggest that an as applied challenge is inappropriate in section 1983. And more importantly, this is a dismissal based on failure to state a claim. Even if the state were correct that one could be held in Cold Springs, that is simply not something that can be judged based on a complaint. Mr. Brown's complaint clearly alleged that he was held under conditions that did not comport with the constitutional standards that should have applied to him as a civilly committed person. The state concedes that for the majority of the time he was in Cold Springs, he was given no treatment. There is absolutely no dispute that he sufficiently stated a claim. And if I can just briefly address your comments with respect to amendment, the amendment was not futile. The state concedes that money damages would have been appropriate as against Tarrant County. The district court's only reason for not allowing that was because he said that the claims against Tarrant County could not stand. That's incorrect for the reasons that we describe in our brief. Thank you. Thank you, Your Honor.